USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-14-12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                           Plaintiff,                           12 Civ. 4760 (PKC)

               -against-                               MEMORANDUM
                                                                     AND ORDER

ONE TYRANNOSAURUS BATAAR
SKELETON,

                         Defendant-in-rem.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        The United States of America brings this in rem action seeking civil forfeiture of One Tyrannosaurus Bataar Skeleton, a/k/a lot 49315 listed on page 92 of the Heritage Auctions May 20, 2012 Natural History Auction Catalog (the "Defendant Property"). The government alleges that the Defendant Property is subject to forfeiture under three different federal statutes, each of which provides in general terms (and interaction with other federal statutes) for the forfeiture of property brought into the United States that is either stolen or introduced by way of false statements. 18 U.S.C. §§ 545, 981(a)(1)(C); 19 U.S.C. § 1595a(c). The amended verified complaint alleges that the Defendant Property was stolen in that it was taken out of Mongolia without permission from the Mongolian state and in violation of Mongolian law. It is alleged that under Mongolian law paleontological artifacts such as the Defendant Property are the property of the state. It is further alleged that the Defendant Property was brought into the United States by way of false statements concerning its value and country of origin.

        Claimant Eric Prokopi moves to dismiss the amended verified complaint, arguing (1) that forfeiture of the Defendant Property violates due process because the public does not

have fair notice of the predicate acts of illegality on which forfeiture is based, and (2) that the Defendant Property is not stolen property for the purposes of the forfeiture provisions invoked by the government.

For the reasons set forth below, the motion is denied.

## BACKGROUND

I. <u>Procedural History</u>

On June 18, 2012, the government filed a verified complaint in this action. The following day, the Court issued a warrant for seizure of the Defendant Property.

On July 27, 2012, Prokopi filed a claim of interest in the Defendant Property pursuant to Supplemental Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules") in which he stated that although he had consigned the Defendant Property to the Heritage Auctions for sale, he remained the owner of the Defendant Property.

On August 17, 2012, Prokopi filed a motion to dismiss the verified complaint. Following a conference held on September 5, 2012, the Court expressed several concerns regarding the sufficiency of the verified complaint and offered the government the opportunity to amend its pleading to cure certain actual or potential deficiencies. <u>See</u> Memorandum and Order of September 7, 2012.

The government filed an amended verified complaint dated September 21, 2012 (the "amended complaint"), and Prokopi moved to dismiss the amended complaint on October 5, 2012.

II. The First Amended Verified Complaint

The following facts are taken from the amended complaint and assumed to be true for the purposes of deciding this motion.

Within the Gobi Desert in Mongolia, there is an area known as the Nemegt Formation where fossilized remains of the Tyrannosaurus bataar ("Bataar") have been found since expeditions in the 1940s. (Compl. ¶¶ 6, 8, 9.) Dinosaur fossils from this area have a distinctive color due to the soil composition of the Nemegt Formation. (Id. ¶ 7, 11.) Bataar remains have been found in areas other than the Nemegt Formation, although not as complete skeletons. (Id. ¶ 10.)

According to paleontological experts, the Defendant Property is a Bataar skeleton that almost certainly came from the Nemegt Formation and was most likely excavated between 1995 and 2005. (Id. ¶¶ 42, 44.) This conclusion is based, among other things, on the distinctive coloring of the Defendant Property. (Id. ¶¶ 43, 59, 65.) Regarding the possibility that the Defendant Property is composed of pieces of multiple, distinct skeletons, some or all of which may have been found outside of Mongolia, three of the experts stated that "[w]hether a single skeleton or multiple skeletons were used to construct this specimen, we are virtually certain that all of the bones were excavated in Mongolia." (Id. ¶ 60.) Again, this conclusion was based in part on the "signature coloration that makes them easy to distinguish visually from fossils from equivalent age in neighboring countries (China, Kazakhstan, Russia)." (Id.) Moreover, the experts opined that it is "unlikely" that the Defendant Property came from more than one specimen given that it is "60% grown" and such grown specimens make up only 13% of those recovered. (Id. ¶ 61.)

3

Prokopi, a self-described commercial paleontologist, has visited Mongolia on several occasions, including in 2008, 2009, 2011, and 2012. (Id. ¶ 83.) He has been seen removing fossils from the ground in the Nemegt Formation of the Gobi Desert. (Id. ¶ 84.) Prokopi consigned the Defendant Property to Heritage Auctions, Inc. ("Heritage"), which offered the Defendant Property for sale on May 20, 2012 at an auction in New York City. (Id. ¶¶ 33, 34.) The Defendant Property sold for $1,052,500, contingent upon the outcome of any court proceedings on behalf of Mongolia. (Id. ¶ 40.)[1]

The component parts of the Defendant Property entered the United States through as many as four separate shipments, including shipments on March 27, 2010, March 22, 2007, and August 29, 2007. (Id. ¶¶ 37, 48, 49, 57.) The government alleges that the entry documentation for the Defendant Property contained several material misstatements regarding the Defendant Property's true country of origin (Mongolia) and value (approximately $1 million). First, in a March 27, 2010 Bureau of Customs and Border Protection Entry/Immediate Delivery form, the country of origin for the Defendant Property is listed as Great Britain and the value of the Defendant Property is stated as $15,000. (Id. ¶ 38.) The Defendant Property is also described in the Commercial Invoice for this shipment as "2 large rough (unprepared) fossil reptile heads;" "6 boxes of broken fossil bones;" "3 rough (unprepared) fossil reptiles;" "1 fossil lizard;" "3 rough (unprepared) fossil reptiles;" and "1 fossil reptile skull." (Id.) Next, the importation documents for the March 22, 2007 shipment listed the items being imported as "fossil specimens" with a declared value of $12,000 and Japan as the country of origin. (Id. ¶ 51.) It appears that the country of origin for the March 22, 2007 shipment was first listed as

---

[1] The sale was made despite issuance of a temporary restraining order by a Texas state court that, granting an application by the President of Mongolia, prohibited Heritage from auctioning the Defendant Property. (Compl. ¶ 40.)

4

Mongolia, but was changed to Japan after UPS received additional information from Prokopi. (Id. ¶¶ 52, 53.) Finally, the documentation for the August 29, 2007 shipment listed the contents as "fossils" with a value of $42,000 and Japan as the country of origin. (Id. ¶ 54.)[2]

## DISCUSSION

I. Pleading Standards

The Supplemental Rules apply in "forfeiture actions in rem arising from a federal statute." Rule A(1)(B), Supp. Rules. This is such an action, and, as such, the Supplemental Rules apply. Specifically, Rule G "governs a forfeiture action in rem arising from a federal statute," and Rules C and E apply "[t]o the extent that [Rule G] does not address an issue." Rule G(1), Supp. Rules. The the Federal Rules of Civil Procedure also apply, "except to the extent that they are inconsistent with these Supplemental Rules." Rule A(2), Supp. Rules.

"A claimant who establishes standing to contest forfeiture may move to dismiss the action under Rule 12(b)." Rule G(8)(b)(i), Supp. Rules. A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is ordinarily governed by the pleading requirements of Rule 8, which the Court assumes to be applicable here, in addition to the enhanced requirements of the Supplemental Rules. Accord In re 650 Fifth Ave. & Related Properties, 777 F. Supp. 2d 529, 541 (S.D.N.Y. 2011). To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing plausibility, courts draw all reasonable inferences in favor of the non-movant. See

---

[2] The amended complaint references other skeletons imported or attempted to be imported into the United States by Prokopi that have also been seized. (Compl. ¶¶ 66-81.) Those seizures are not at issue in this proceeding.

In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007). Legal conclusions, however, are not entitled to any presumption of truth, and a court assessing the sufficiency of a complaint disregards them. Iqbal, 556 U.S. at 678. Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." Id.

In addition to the pleading requirements applicable under Rule 8, forfeiture complaints are subject to certain other requirements found in the Supplemental Rules. Rule G(2)(f) requires that the complaint "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Rule G(2)(f), Supp. Rules. And Rule E(2)(a) states that "the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Rule E(2)(a), Supp. Rules.[3] These standards are regarded as "more stringent than the general pleading requirements set forth in the Federal Rules of Civil Procedure, . . . an implicit accommodation to the drastic nature of the civil forfeiture remedy." United States v. Daccarett, 6 F.3d 37, 47 (2d Cir. 1993) (internal citations omitted).

Although this is a motion to dismiss, Rule G references the government's burden of proof at trial. Under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), the burden of proof is on the government to establish, by a preponderance of the evidence, that the property is subject to forfeiture. 18 U.S.C. § 983(c). CAFRA applies to the two forfeiture statutes

---

[3] Rule G also states, however, that "[i]n an action governed by 18 U.S.C. § 983(a)(3)(D) the complaint may not be dismissed on the ground that the government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property. The sufficiency of the complaint is governed by Rule G(2)." Rule G(8)(b)(ii), Supp. Rules.

invoked by the government that are found in Title 18, but not to 19 U.S.C. § 1595a, which is subject to a "customs carve out" from CAFRA.  18 U.S.C. § 983(i)(2)(A); see United States v. Davis, 648 F.3d 84, 94 (2d Cir. 2011).  Thus, the pre-CAFRA burden-shifting approach of 19 U.S.C. § 1615 applies under Section 1595a, meaning that once the government has established probable cause for forfeiture, the burden of proof shifts to the claimant to establish a defense to forfeiture.  See Davis, 648 F.3d at 95-96.

"[O]n a motion to dismiss, a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit,'" although "mere notice or possession is not enough" absent plaintiff's reliance on such documents.  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (quoting Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (omissions in Chambers).  A court may also consider "[a]n affirmative defense . . . raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."  Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998).

II. Statutory Bases For Forfeiture

The amended complaint alleges three separate statutory bases for forfeiture of the Defendant Property.

a. 18 U.S.C. § 981(a)(1)(C) – Civil Forfeiture

The government alleges that the Defendant Property is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C), because, in the words of the statute, it "constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting 'specified unlawful activity' (as

defined in section 1956(c)(7) of this title)." 18 U.S.C. § 981(a)(1)(C). The government alleges that Section 981 applies "because there is probable cause to believe that the Defendant Property is property, real or personal, which constitutes or is derived from a violation of Title 18, United States Code Section 2314 and/or Section 2315." (Compl. ¶ 97.)[4]

Sections 2314 and 2315 constitute the National Stolen Property Act ("NSPA"). See Davis, 648 F.3d at 87. Section 2314 states in relevant part:

> Whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud . . . [s]hall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 2314. Section 2315 states in relevant part:

> Whoever receives, possesses, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, which have crossed a State or United States boundary after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken . . . [s]hall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 2315. Thus, "[a]n NSPA violation consists of three elements: '(1) the transportation in interstate or foreign commerce of property, (2) valued at $5,000 or more, (3) with knowledge that the property was stolen, converted, or taken by fraud.'" United States v. Portrait of Wally, 663 F. Supp. 2d 232, 250 (S.D.N.Y. 2009) (citation omitted).

Because of CAFRA, forfeiture under Section 981 is subject to an innocent-owner defense, with the burden of proof on the claimant to prove he is an innocent owner by a

---

[4] Section 1956(c)(7) defines "specified unlawful activity" as including, among other things, "any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31." 18 U.S.C. § 1956(c)(7)(A). That provision includes Sections 2314 and 2315 of Title 18. 18 U.S.C. § 1961(1).

8

preponderance of the evidence. 18 U.S.C. § 983(d)(1). A claimant may assert an innocent-owner defense where his property interest existed at the time of the conduct giving rise to forfeiture if he "did not know of the conduct giving rise to forfeiture," or, "upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983(d)(2)(A). Alternatively, a claimant whose property interest was acquired after the conduct giving rise to forfeiture may assert an innocent-owner defense if he was "a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value)" and he "did not know and was reasonably without cause to believe that the property was subject to forfeiture." 18 U.S.C. § 983(d)(3)(A).

    b. <u>18 U.S.C. § 545 – Smuggling Goods Into The United States</u>

The government also alleges that the Defendant Property is subject to forfeiture under 18 U.S.C. § 545. (Compl. ¶ 96.) Section 545 states in relevant part:

> Whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law--
>
> Shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 545. The provision further states that "[m]erchandise introduced into the United States in violation of this section, or the value thereof, to be recovered from any person described in the first or second paragraph of this section, shall be forfeited to the United States." <u>Id.</u>

The government alleges that Section 545 applies "because there is probable cause to believe . . . that the Defendant Property was (1) introduced into the United States by means of

false statements in violation of Title 18, United States Code, Section 542 and/or (2) imported into the United States knowing it was stolen or converted." (Compl. ¶ 96.)

> Section 542 states in relevant part that:
>
> Whoever enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance, or makes any false statement in any declaration without reasonable cause to believe the truth of such statement, or procures the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, . . . [s]hall be fined for each offense under this title or imprisoned not more than two years, or both.

18 U.S.C. § 542. Thus, "[t]o be convicted for false statements under Section 542, a defendant must: (1) attempt to import merchandise into the United States (2) 'by means of' a false statement (3) without reasonable cause to believe the truth of such statement or practice." United States v. Avelino, 967 F.2d 815, 817 (2d Cir. 1992). A violation of Section 542 may serve as a predicate for forfeiture under Section 545, provided that the misstatement is material. See United States v. An Antique Platter of Gold, 184 F.3d 131, 134-38 (2d Cir. 1999) (holding that misstatement as to country of origin was material where property may have been considered stolen under Italian patrimony law). A misstatement is material in this context if it would have "a natural tendency to influence a reasonable customs official." Id. at 138.

Presumably, a violation of the NSPA may also serve as a predicate under Section 545 as it may under 19 U.S.C. § 1595a(c), which uses the same "contrary to law" language. See Davis, 648 F.3d at 90 (holding NSPA violation may serve as predicate under Section 1595a(c)); accord Portrait of Wally, 663 F. Supp. 2d at 250 (analyzing claims under Sections 545 and 1595a(c) in parallel).

10

A forfeiture claim under Section 545 is subject to the same innocent-owner defenses as apply under Section 981. See 18 U.S.C. § 983(d).

### c.  19 U.S.C. § 1595a(c) – Forfeitures And Other Penalties

Finally, the government alleges that the Defendant Property is subject to forfeiture under 19 U.S.C. § 1595a(c). That section states in relevant part:

> Merchandise which is introduced or attempted to be introduced into the United States contrary to law shall be treated as follows:
> (1) The merchandise shall be seized and forfeited if it--
> (A) is stolen, smuggled, or clandestinely imported or introduced;

19 U.S.C. § 1595a(c). The requirements that the property be (1) introduced "contrary to law" and (2) "stolen, smuggled, or clandestinely imported or introduced" are separate and must both be satisfied. See United States v. Broadening-Info Enters., Inc., 462 Fed. App'x 93, 97 (2d Cir. 2012) (summary order) (remanding to district court for consideration of second prong as distinct from the first).

The term "contrary to law" is not defined, but the requirement can be satisfied by proving a violation of another statute, including the NSPA or Section 542. See Davis, 648 F.3d at 90 (holding NSPA violation may serve as predicate for "contrary to law" requirement in Section 1595a(c)); Broadening-Info Enters., 462 Fed. App'x at 96 (noting that "contrary to law" prong can be met by fraudulent or false statements in violation of 18 U.S.C. § 542). Although the "contrary to law" and "stolen, smuggled, or clandestinely imported or introduced" prongs are separate, the statutory language suggests that the same statutory predicate may satisfy both prongs in some instances, for example where property is introduced "contrary to law" in that it is stolen property or was introduced clandestinely in violation of a statute requiring disclosure.

11

Here, the government has not alleged a specific statutory predicate to meet either prong, but it has alleged that the Defendant Property was "(1) introduced into the commerce of the United States by means of false statement and/or (2) transported in foreign commerce knowing it was stolen or converted." (Compl. ¶ 95.) The first of these two allegations could fall under 18 U.S.C. § 542 and the second under the NSPA, and in each case both prongs of Section 1595a(c) might plausibly be satisfied.

Unlike forfeiture under Sections 545 and 981 of Title 18, forfeiture under Title 19 is not subject to an innocent-owner defense. See 18 U.S.C. § 983(i)(2)(A) (excluding Title 19 from definition of "civil forfeiture statute[s]" subject to innocent-owner defense); Davis, 648 F.3d at 94-95 (noting the absence of an innocent-owner defense under Section 1595a(c)).

III. Fair Notice

Relying principally on the Supreme Court's recent decision in Fed. Commc'ns Comm'n v. Fox Television Stations, Inc., 132 S. Ct. 2307 (2012), Prokopi argues that the amended complaint should be dismissed because fossil collectors have not been given fair notice of either Mongolian law or the country of origin and valuation rules relating to the importation of paleontological objects. (Cl. Br. 11.) As the Supreme Court stated in Fox, "[a] fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." Id. at 2317 (citing Connally v. General Constr. Co., 269 U.S. 385, 391 (1926)). This fair notice requirement is imbedded in the Fifth Amendment's Due Process Clause and "requires the invalidation of laws that are impermissibly vague" where the law "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is

so standardless that it authorizes or encourages seriously discriminatory enforcement." Id. (quoting United States v. Williams, 553 U.S. 285, 304 (2008)).[5]

    a. Fair Notice Of Country Of Origin And Valuation Rules

As to the alleged misstatements concerning the country of origin and value of the Defendant Property, Prokopi's due process argument is misplaced. Prokopi contends that the failure of the government to provide regulatory guidance on determining the proper country of origin or value of fossils leaves importers "hard-pressed to respond to a customs broker's inquiry about the country of origin of a dinosaur fossil that existed millions of years before the emergence of Homo sapiens and even longer before the concept of a 'country' was established." (Cl. Br. 14-15.) This argument fails because the statutes in violation of which the Defendant Property is alleged to have been imported do not prohibit the importation of paleontological objects in contravention of certain regulations, vague or otherwise (and indeed, Prokopi submits that there are no applicable regulations). Instead, they prohibit importation by way of knowingly false statements. 18 U.S.C. § 542. The prohibition in Section 542 against importation by means of "any false statement" is not vague or ambiguous, and it does not make reference or in any way depend upon regulatory guidance concerning the proper country of origin or value of fossils. If Prokopi did not know that his statements were false, he may have a defense to forfeiture under Section 542 based on the absence of mens rea, or he may be able to invoke an innocent-owner affirmative defense, but these are factual question not properly before the Court on this motion.

---

[5] Prokopi also argues that "Congress decided not to regulate the import of undocumented paleontological objects when it passed the CPIA," i.e. the 1983 Convention on Cultural Property Implementation Act, 19 U.S.C. § 2601 et seq. (Cl. Br. 16.) The Second Circuit has considered and rejected a similar argument with respect to the effect of CPIA, and it is rejected here as well, as there is no indication that CPIA alters the scope of any of the statutes invoked by the government. See United States v. Schultz, 333 F.3d 393, 409 (2d Cir. 2003) ("[W]e conclude that the passage of the CPIA does not limit the NSPA's application to antiquities stolen in foreign nations.")

Prokopi's due process challenge fails because Section 542 gives fair warning that knowingly false statements are prohibited.

The amended complaint alleges facts that, drawing reasonable inferences in the government's favor, suggest that the Defendant Property was unearthed, not millions of years ago, but between 1995 and 2005 (Compl. ¶ 44), and that, based on its size and coloration, the Defendant Property came from the Gobi Desert in Mongolia. (Id. ¶¶ 42-44, 58-65.) The amended complaint also raises a plausible inference that Prokopi's statements in connection with importation of the Defendant Property were knowingly false.

The amended complaint alleges that Prokopi erroneously listed the country of origin as Japan and Great Britain on importation paperwork when in fact the Defendant Property was from Mongolia. (Id. ¶¶ 38, 51-54.) The amended complaint further alleges that Prokopi is a commercial paleontologist who had excavated fossils in Mongolia's Nemegt Formation himself before. (Id. ¶¶ 82-84.) These facts give rise to a plausible inference that Prokopi unearthed the Defendant Property himself in Mongolia, or, even if he did not, that he had reason to know that such fossils likely came from Mongolia. The inference of knowing wrongdoing is buttressed by the allegation that Prokopi changed the country of origin on the March 22, 2007 shipment from Mongolia to Japan. (Id. ¶¶ 52-53.) There may be an innocent explanation for this change, but on its face the allegation suggests Prokopi's awareness of illegality and his attempt to avoid detection.

The same goes for the value of the Defendant Property. Collectively, the three shipments identified in the amended complaint had a stated value of $69,000, whereas the Defendant Property was listed at auction as having a value between $950,000 and $1,500,000. (Id. ¶¶ 38, 51, 54.) While it may be the case that Prokopi's efforts in assembling the contents of

14

the shipments into a single display piece constituting the Defendant Property significantly increased the value of the fossils contained in the shipments, it is not implausible that the declared values—which appear to have understated the value of the Defendant Property by more than an order of magnitude—constituted knowing misstatements, and it is reasonable to draw an inference of wrongdoing on these facts at the pleading stage.[6]

b. Fair Notice Of Mongolian Law

Prokopi's fair notice argument concerning Mongolian law also fails. It may be, as Prokopi contends, that "fossil collectors could have no fair notice of Mongolia's laws cited in the Complaint," as these are "not readily available to the general public" (Cl. Br. 15), or perhaps that Mongolian law itself is impermissibly vague,[7] but this does not appear on the face of the well-pleaded complaint and hence is not appropriate for consideration on a motion to dismiss. Moreover, the Second Circuit has stated that a defense based on the misapprehension of foreign law bears on the mens rea requirement under the NSPA. See United States v. Schultz, 333 F.3d 393, 411 (2d Cir. 2003) ("A defendant charged with violating the NSPA may argue that he did not know a certain *fact* that made his conduct criminal, that is, that he did not know the objects in question were stolen."); accord United States v. Hollinshead, 495 F.2d 1154, 1156 (9th Cir.

---

[6] According to the amended complaint, Prokopi most recently stated that the Defendant Property was constructed from "*four* international shipments as well as material purchased domestically," but that "the specifics of those shipments were not disclosed except that it was believed some of the international shipments came from Japan." (Compl. ¶ 57.) The unidentified fourth shipment and domestic material may ultimately explain, in conjunction with Prokopi's efforts in assembling the Defendant Property, the apparent discrepancy between the stated value of the three shipments identified in the amended complaint and the value of the Defendant Property at auction, but this possibility does not negate the reasonable inference arising from the amended complaint that Prokopi knowingly misstated the value of the Defendant Property.

[7] See United States v. McClain, 593 F.2d 658, 671 (5th Cir. 1979) ("Though the National Stolen Property Act is not void for vagueness because the general class of offenses to which it is directed is plainly within its terms, it cannot properly be applied to items deemed stolen only on the basis of unclear pronouncements by a foreign legislature.")

15

1974) (noting, in context of appeal from NSPA conviction stemming from importation of a stele from Guatemala, that "Appellants' knowledge of Guatemalan law is relevant only to the extent that it bears upon the issue of their knowledge that the stele was stolen"). Thus, Prokopi may ultimately prevail by demonstrating that Mongolian law is improperly vague or that Prokopi lacked the requisite knowledge of illegality, but neither defense is properly considered on this motion.

IV. Stolen Property

Finally, Prokopi argues that the Defendant Property is not stolen property for purposes of any of the statutory bases of forfeiture because the amended complaint fails adequately to allege that Prokopi knew the Defendant Property was taken from Mongolia without that state's permission, and further because Mongolian law does not make fossils the property of the state. Although this argument raises a question of foreign law that the Court could decide on a motion to dismiss,[8] the Court declines to make a final determination as to the content of Mongolian law in this interlocutory order, finding it sufficient to hold that the amended complaint states a claim for relief under the Supplemental Rules.

The Second Circuit examined this issue in the context of the NSPA in United States v. Schultz, 333 F.3d 393, 410 (2d Cir. 2003), and held that "the NSPA applies to property that is stolen in violation of a foreign patrimony law" where the effect of the patrimony law is to "assert true ownership of certain property" as opposed to those laws that operate "merely to restrict the export of that property." In so holding, the Second Circuit adopted the reasoning of United States v. McClain, 545 F.2d 988, 1000-01 (5th Cir. 1977), in which the Fifth Circuit held

---

[8] See Rule 44.1, Fed. R. Civ. P. ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.").

that "a declaration of national ownership is necessary before illegal exportation of an article can be considered theft, and the exported article considered 'stolen', within the meaning of the National Stolen Property Act."

The amended complaint sets out a number of provisions of Mongolian law in support of the allegation that fossils such as the Defendant Property have been state property under Mongolian law since 1924. (Compl. ¶¶ 12-32.) Only some of these provisions are relevant here. First, the amended complaint alleges that the Defendant Property was unearthed between 1995 and 2005, so the law in effect before 1995 is not material. (Id. ¶ 44.) Second, only those provisions that purport to vest ownership in the state, and not those that merely restrict transfer or exportation, are relevant under Schultz.

The amended complaint alleges three provisions that warrant consideration. First, the most recent Mongolian Constitution, enacted in 1992, states that "[h]istorical, cultural, scientific and intellectual heritages of the Mongolian People shall be under State protection." (Id. ¶ 17.) Second, the 1924 Mongolian Rules to Protect the Antiquities, which, judging by the amended complaint, may still be in force, state that "all antique items and relics of the past found within the territory of Mongolia shall be owned by Mongolia," and further define "antiques and relics" to include "[p]aleontological items such as remnants of ancient plants and animals." (Id. ¶ 19.) Finally, the 2001 Mongolian Law on Cultural Heritage states that "[t]he territory and land bowels where historically, culturally and scientifically significant objects exist shall be under state protection and any such findings shall be a state property," and defines fossils and animal imprints as such objects. (Id. ¶¶ 21, 22.)

Prokopi argues that the 1992 Constitution, when compared with earlier versions, effected a "radical shift from State 'possession' to State 'protection.'" (Cl. Br. 19.) Even

17

assuming arguendo that this is true, however, the 1924 Mongolian Rules to Protect the Antiquities and the 2001 Mongolian Law on Cultural Heritage would, if applicable to the Defendant Property, render it "owned by Mongolia" and "state property," respectively.[9]

Even so, Prokopi argues that Mongolia must do more than simply decree by law that the Defendant Property is state property—it must actively enforce those laws. (Cl. Br. 21.) Prokopi relies on the statement in Schultz that "the government's active enforcement of its ownership rights confirms the intent of the Law" to claim government ownership of all antiquities found in Egypt after 1983. Schultz, 333 F.3d at 402. Schultz states that enforcement is probative of the intent behind a foreign law, but the opinion falls short of making active enforcement a pleading requirement. See id. at 410 ("[O]ur courts are capable of evaluating foreign patrimony laws to determine whether their language and enforcement indicate that they are intended to assert true ownership of certain property, or merely to restrict the export of that property."). If, at a later stage in this case, the Court is called upon to make a definitive determination as to the content of Mongolian law, evidence of Mongolia's active enforcement of its patrimony laws—or lack thereof—may be probative, but the government need not plead active enforcement of these laws in order to state a plausible claim for relief where, as here, the foreign statutes pleaded in the complaint appear on their face to vest title in the Defendant Property in a foreign state.

---

[9] Prokopi argues that other provisions of the 2001 Mongolian Law on Cultural Heritage belie any intent by the Mongolian government to exercise ownership over fossils such as the Defendant Property because the law allows for private ownership in some instances. (Cl. Br. 20.) In particular, Article 14 of that statute, "Rights and obligations of owner of the historical[ly] and cultural[ly] valuable object," presupposes the possibility of private ownership. (Tompa Decl. Ex. C at 9.) Again, the Court declines to make a definitive interpretation of Mongolia law here, but notes that the statute applies to a broad range of objects, including ethnic clothing, scriptures, and works of fine art, and that Article 14 and similar provisions may not apply to objects, such as the Defendant Property, that are found in "[t]he territory and land bowels" of Mongolia and that are "state property" under the statute. (Id. at 2, 8.)

Little more need be said concerning Prokopi's argument that, even if the Defendant Property is stolen, the amended complaint fails to allege adequately that he had knowledge of its theft. As explained above, the amended complaint alleges that Prokopi is a commercial paleontologist who has excavated skeletons in Mongolia before. This, coupled with Prokopi's alleged attempts to obscure the Defendant Property's country of origin on importation paperwork, raises a reasonable inference that Prokopi knew the Defendant Property was stolen from the Mongolian state.

## CONCLUSION

For the foregoing reasons, the amended complaint pleads "sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Rule G, Supp. Rules. Accordingly, Prokopi's motion to dismiss the complaint (Docket No. 26) is DENIED.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated:  New York, New York
        November 14, 2012